26 F.3d 130
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re GRAND CHEVROLET, INC., and related entities,
including: Grand Motors, Inc.; Grand Wilshire
Finance Corporation; Grand Wilshire
Capital, Inc., Debtors.
Irving SULMEYER, Chapter 11 Trustee, Plaintiff-Appellant,
v.
PACIFIC BMW, Defendant-Appellee.
 No. 92-56267.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 7, 1994.
Decided June 2, 1994.
 
 Before: FARRIS, RYMER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Trustee Irving Sulmeyer appeals the granting of summary judgment to Pacific BMW. The district court held that the transfers of 13 vehicles from the debtor to Pacific BMW were not preferential under 11 U.S.C. Sec. 547(b). We have jurisdiction under 28 U.S.C. Secs. 158(d) and 1291. We review de novo. In re Food Catering & Housing, Inc., 971 F.2d 396, 397 (9th Cir.1992).
 
 
 3
 Pacific BMW argues 1) that the purchase agreements were executory; 2) that the parties rescinded the purchase agreements prior to the filing of the bankruptcy petition, and 3) that the debtor therefore did not have an "interest" in the vehicles when they were repossessed by Pacific BMW. We agree.
 
 
 4
 Whether a contract is executory under the Bankruptcy Code is a question of federal law. In re Wegner, 839 F.2d 533, 536 (9th Cir.1988). A contract is executory where "the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other." Id. Whether a party's failure to perform a remaining obligation under a contract would give rise to a material breach is a question of state law. Id.
 
 
 5
 The debtor had yet to perform a material obligation under the purchase agreements--it had not yet paid for the vehicles. Pacific BMW contends that it too had not performed its material obligations because it had not complied with mandatory statutory provisions of the California Vehicle Code. Section 4456 of the Vehicle Code provides that
 
 
 6
 When selling a vehicle, dealers and lessor-retailers shall use numbered report-of-sale forms issued by the department. The forms shall be used in accordance with the following terms and conditions:
 
 
 7
 ....
 
 
 8
 (2) The dealer or lessor-retailer shall submit to the department an application ... for registration or transfer of registration [of the vehicles].
 
 
 9
 CalVeh.Code Sec. 4456. Pacific BMW did not submit an Application for Registration of New Vehicle, also referred to as a "Report of Sale", to the Department of Motor Vehicles with respect to any of the vehicles. Instead, the parties contemplated that the Reports of Sale would be transferred to the debtor when payment was received. Without submission of the Reports of Sale to the DMV, the vehicles could not have been properly registered under the Vehicle Code. The failure to register a vehicle with the DMV is a violation of Cal.Veh.Code Sec. 4000. Thus, had the debtor performed its contractual obligations (i.e. paid for the vehicles), Pacific BMW's failure to turn over the Reports of Sale would have amounted to a material breach.[1] Since both the debtor and Pacific BMW had yet to perform material obligations under the purchase agreements, the agreements were executory.
 
 
 10
 We must next decide whether the parties rescinded the purchase agreements. California law provides that a contract may be rescinded if all parties thereto consent. Cal.Civ.Code Sec. 1689(a). The "mutual cancellation of executory contractual rights" is sufficient consideration to extinguish the obligations created by a written contract. See Sass v. Hank, 238 P.2d 652, 658 (Cal.Dist.Ct.App.1952). On July 28, 1988, Pacific BMW's president, David Ho, learned from the debtor's general manager that the debtor would be unable to pay for the vehicles. Ho made arrangements with the debtor to repossess the vehicles later that day. The debtor's employees assisted Pacific BMW employees in removing the vehicles from the debtor's lot. These facts establish that the parties intended to mutually rescind the purchase agreements prior to the repossession of the vehicles. In so doing, each party gave up its contractual rights under the purchase agreements. The rescission was effective under California law.
 
 
 11
 To constitute a preferential transfer, the transfer must be of an "interest of the debtor in property." 11 U.S.C. Sec. 547(b). The mutual rescission of the executory agreement left the debtor without an "interest" in the vehicles. In re Wegner, 839 F.2d at 538-39. The trustee has therefore failed to establish that there was a "transfer of an interest of the debtor in property." 11 U.S.C. Sec. 547(b).
 
 
 12
 AFFIRMED.
 
 KLEINFELD, Circuit Judge, dissenting:
 
 13
 I respectfully dissent.
 
 
 14
 Glessner v. Massey-Ferguson, Inc., 353 F.2d 986, 992 (9th Cir.1965), appears to me to require a different result. There, Massey-Ferguson sold farm equipment to the bankrupt, reserving an unperfected security interest until full payment. Before the bankruptcy filing, while the bankrupt was insolvent, Massey-Ferguson took the machinery back. We treated the repossession as perfection of a security interest. See U.C.C. Sec. 9-305. Because Massey-Ferguson got more by repossession than it would have gotten by sharing in the estate with other creditors, the repossession was a preference. It was like giving an unsecured creditor a security interest before filing bankruptcy. When Pacific repossessed the 13 BMW's one week before Grand filed for bankruptcy, it perfected its secret lien and received a preference.
 
 
 15
 Wegner seems to me to be distinguishable. Under Montana law, the more specific statue on cattle transactions controlled over the more general provision in the Uniform Commercial Code. Montana made it unlawful, not just ineffective, to transfer branded cattle without a bill of sale, to prevent cattle rustling. A Montana creditor would not be misled by bare possession, as would generally be the case, because cattle are branded, and as Wegner points out, a brand is prima facie evidence of ownership. The Montana statute prevented title from passing unless the cattle were inspected for brands and a bill of sale was signed and presented by the seller to a livestock inspector. Wegner, 839 F.2d at 536.
 
 
 16
 The Montana cattle statute makes Wegner distinguishable. The U.C.C. rule is that title passes upon physical delivery of the goods, unless otherwise explicitly agreed. U.C.C. Sec. 2-401(2); Cal.Com.Code Sec. 2401 (West 1964). The U.C.C. applies, not the California Vehicle Code, for dealer-to-dealer transfers of inventory. Vehicle Code Secs. 5600, 5906. Louis & Diedrich, Inc. v. Cambridge European Imports, Inc., 234 Cal.Rptr. 889, 895 (Ct.App.1987).
 
 
 17
 Wegner says that when the sales agreement was rescinded, "the property would have automatically reverted back to appellant, leaving [the estate] with no interest in the property." 839 F.2d at 537. The only reason the property would revert back to the seller is that the seller had title under that specific Montana statute. Under the U.C.C., the buyer has title, so the property cannot revert back as in Wegner.
 
 
 18
 Glessner is a routine application of the general policies of preference law, while Wegner is exceptional. We should keep it that way. "Equal division of the assets of a debtor among creditors would be defeated if the debtor could pick and choose among them and then file bankruptcy or if one creditor seized property or obtained an involuntary lien such as by attachment." 2 Cowans Bankruptcy Law & Practice Sec. 10.7 (1986) (emphasis added). We have said that preference law prevents insistent creditors from getting more than their fair share by transfers on the eve of bankruptcy. DuBay v. Williams, 417 F.2d 1277, 1288 (9th Cir.1969).
 
 
 19
 Allowing Pacific to take back the cars it sold to Grand on credit undermines these policies. Grand allowed Pacific to get the full benefit of its secret lien. This benefit prejudiced other creditors who may have relied on the fact that Grand had a lot full of cars (with no recorded security interest) when they extended credit to Grand. Moreover, a decision in Pacific's favor will encourage creditors to chase after insolvent debtors in an effort to get back goods sold on credit by "rescinding" their contracts.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because we hold that Pacific's failure to comply with the registration requirements of the Vehicle Code would amount to a material breach, we do not address Pacific BMW's argument that under Cal.Veh.Code Sec. 5600(b), its failure to convey the Reports of Sale to the debtor prevented title to the vehicles from passing to the debtor